UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
:
I. STEPHEN RABIN, on behalf of himself :
and all others similarly situated, :
:
Plaintiff, : No. 14 Civ. 4498 (JSR)
:
: ECF Case
v. :
:
:
THE NEW YORK TIMES COMPANY, :
DOW JONES & COMPANY, INC., and :
FORBES, INC., :
:
Defendants. :
:
------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY**

Clifford Thau
Hilary Preston
VINSON & ELKINS LLP
666 Fifth Avenue, 26th Floor
New York, New York 10103
Telephone: (212) 237-0000
Facsimile: (212) 237-0100
cthau@velaw.com
hpreston@velaw.com

*Attorneys for Defendant*
*Dow Jones & Company, Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................................... 1

STATEMENT OF FACTS .................................................................................................................. 2

      A.     Mr. Rabin and Mr. Bragar Withheld Key Facts from the Initial Complaint ........... 2

      B.     Mr. Rabin and Mr. Bragar Persist with an Amended Complaint After Learning of Additional Contrary Evidence .............................................................. 4

      C.     Mr. Bragar and Mr. Rabin Continue to Push their Case After Additional Discovery Confirms that it is Baseless ..................................................................... 4

      D.     Dow Jones Discovers that Mr. Rabin Already Received a Refund and Had Not Been Truthful in his Discovery Responses ....................................................... 5

ARGUMENT ........................................................................................................................................ 6

I.      PLAINTIFF'S LAWSUIT WAS ENTIRELY WITHOUT COLOR ................................. 6

      A.     No Reasonable Attorney or Party Would Have Brought this Lawsuit .................... 7

      B.     No Reasonable Attorney or Party Would Have Maintained this Lawsuit ............... 8

II.     PLAINTIFF AND HIS ATTORNEY ACTED IN BAD FAITH ....................................... 9

CONCLUSION ................................................................................................................................... 10

CERTIFICATE OF SERVICE .......................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Baker v. Urban Outfitters, Inc.*,
   431 F. Supp. 2d 351, 358 (S.D.N.Y. 2006),
   *aff'd*, 249 F. App'x 845 (2d Cir. 2007) ................................................................... 9

*Chambers v. NASCO, Inc.*,
   501 U.S. 32, 43 (1991) ............................................................................................. 6

*Eisemann v. Greene*,
   204 F.3d 393, 396 (2d Cir. 2000) ............................................................................ 6

*Mackler Prods., Inc. v. Turtle Bay Apparel Corp.*,
   153 F. Supp. 2d 504, 508 (S.D.N.Y. 2001) ............................................................ 10

*Reichmann v. Neumann*,
   553 F. Supp. 2d 307, 319 (S.D.N.Y. 2008) ..................................................... 6, 8, 9

*Rosario v. Receivable Mgm't Servs. Corp.*,
   No. 11-Civ-8720-DLC, 2012 WL 2359874, at *5 (S.D.N.Y. June 21, 2012) .......... 8

*Schlaifer Nance & Co., Inc. v. Estate of Warhol*,
   194 F.3d 323, 337 (2d Cir. 1999) ......................................................................... 6, 9

**Statutes**

28 U.S.C. § 1927 .................................................................................................... 1, 2, 6

Defendant Dow Jones & Company, Inc. ("Dow Jones"), respectfully submits this memorandum of law in support of its motion for sanctions under 28 U.S.C. § 1927 and the inherent authority of this Court against Plaintiff I. Stephen Rabin and his attorney Raymond A. Bragar.

## PRELIMINARY STATEMENT

Plaintiff I. Stephen Rabin and his attorney, Raymond Bragar, should never have brought these claims against Dow Jones, as it was clear from the start that they were both factually and legally baseless. Even before discovery, Dow Jones provided Mr. Rabin and Mr. Bragar with evidence refuting both their specific allegations and their general theory of the case. Yet rather than pursuing the non-party that perpetrated the subscription fraud at the center of the suit, Circulation Billing Services ("CBS"), Mr. Bragar and Mr. Rabin persisted in their claims against Dow Jones, even filing an amended complaint that failed to consider and reflect any of the evidence provided that proved the groundlessness of their assertions. That conduct alone would be indefensible, but what Dow Jones learned through discovery is even more concerning, and compels Dow Jones to bring this motion seeking sanctions. As the litigation progressed—and as Dow Jones was forced to spend significant resources defending itself—it became apparent that Mr. Rabin and Mr. Bragar knew from the start that their lawsuit was without merit. And the more Dow Jones probed, the clearer it became that Mr. Rabin and Mr. Bragar consistently and repeatedly took positions in their prosecution of this suit that were wholly at odds with the truth:

| PLAINTIFF'S FALSE LITIGATION POSITION | THE TRUTH |
|---|---|
| Rabin testifies he never contacted CBS for relief. (Rabin Dep. at 77, 90) (Ex. H to Thau Decl.) | Bragar later acknowledges that Rabin not only contacted CBS but received a refund from CBS. (Thau Decl. ¶¶ 5, 6) |
| Rabin seeks damages for payments in the amounts of $299.95, $299.95, and $599.95. (Comp. ¶ 14) | Rabin withholds from discovery refund checks he received from CBS in those precise amounts. (Thau Decl. ¶ 5) |
| Rabin alleges that he relied on the CBS Notices and was deceived by them. (Am. Compl. ¶ 11) | Rabin later admits that he never sent in payment in response to the CBS Notices, never relied on them, and was not deceived by them. (Rabin Dep. at 178-80) |

| | |
|---|---|
| Rabin alleges Dow Jones was "conspiring" with CBS. (Compl. ¶ 10, Am. Compl. ¶ 9) | Rabin later admits that this allegation was an "overstatement." (Rabin Dep. at 289) |
| Rabin alleges the CBS Notices were "authorized" by Dow Jones. (Am. Compl. ¶ 10) | Rabin later admits that this allegation was an "overstatement" (Rabin Dep. at 254), and admits that he omitted from his initial and amended complaints the backs of the CBS Notices that state there is "not necessarily . . . a direct relationship" between CBS and Dow Jones. (*Id.* at 257:11-258:10, 259:14-19) |
| Rabin alleges that there is a "special relationship" with Dow Jones. (Am. Compl. ¶ 33) | Rabin later admits that he has no basis for that allegation. (Rabin Dep. at 283) |
| Rabin alleges that he never received legitimate renewal notices. (Compl. ¶ 14) | Rabin later admits that he has received legitimate renewal notices (Rabin Dep. at 184-86) |
| Rabin alleges that Dow Jones "received monies" for subscriptions obtained by CBS. (Am. Compl. ¶ 14) | Rabin later admits that Dow Jones had not cashed any of the $1.4 million in checks that it had identified as originating with CBS (Rabin Dep. at 203-204) |

This extraordinary conduct exemplifies the type of behavior sanctionable under Section 1927 and the inherent authority of this Court.

Dow Jones does not bring this motion lightly and does so only after repeatedly alerting Mr. Rabin and Mr. Bragar to their improper behavior—to no effect. Mr. Rabin's and Mr. Bragar's failure to dismiss this frivolous lawsuit needlessly multiplied the proceedings in this case by, for example, compelling the filing of two motions to dismiss, incurring considerable expenses during discovery, and consuming the resources of this Court and Dow Jones on a hearing for a motion to dismiss on a complaint that never should have been filed. Therefore, Dow Jones respectfully requests that the Court grant this motion and order Mr. Rabin and Mr. Bragar to pay all of Dow Jones' attorneys' fees incurred in defense of this suit.

### STATEMENT OF FACTS

**A.     Mr. Rabin and Mr. Bragar Withheld Key Facts from the Initial Complaint.**

Mr. Rabin and Mr. Bragar are two class action lawyers with nearly a century of combined experience who share office space and have worked together in several prior lawsuits, including

2

ones in which Mr. Rabin was a named class-action plaintiff. (*See* Declaration of Clifford Thau ("Thau Decl."), at Ex. I (Deposition of I. Stephen Rabin ("Rabin Dep.")) at 111; 118:24-119:5.)

The Initial Complaint alleged that Mr. Rabin fell victim to a subscription fraud scam being run by CBS, and that Dow Jones owed him at least $1,919.70 in damages—the amount he allegedly paid to CBS for subscriptions to *The Wall Street Journal* and *Barron's*. Notably, CBS was never a party to the lawsuit; Mr. Bragar told this Court it was too difficult to find CBS. (Ex. K to Thau Decl. at 7.) But the truth—which Mr. Bragar and Mr. Rabin left out of the Complaint—was that Mr. Rabin had ***already found CBS, been in contact with CBS, and promised a refund by CBS***. Nevertheless, Mr. Rabin and Mr. Bragar chose to bring this lawsuit against Dow Jones, seeking recovery from Dow Jones of the very same payments for which they were already expecting a refund. (Compl. ¶ 14.)

In addition to hiding the fact that Mr. Rabin anticipated a refund from CBS, Mr. Rabin and Mr. Bragar also omitted from the Complaint the backs of the CBS Notices, which made clear that CBS and Dow Jones were not working in concert—stating that CBS "do[es] not necessarily have a direct relationship with the publishers or publications" being offered. (Ex. B to Thau Decl.) That omission was a conscious choice, as Mr. Rabin later testified that he reviewed both the front and the back of the CBS Notices before filing his Complaint. (*See* Ex. I to Thau Decl. (Rabin Dep.) at 190:8-191:24.)

Further, while Mr. Rabin and Mr. Bragar appended to the Complaint Dow Jones's warning to its *Barron's* subscribers about the subscription scheme, they alleged in the lawsuit that Dow Jones was liable to Mr. Rabin for failing to provide him with notice of the scheme. But Mr. Rabin testified in his deposition that he saw the *Barron's* warning at the time it was published in November 2013—eight months before filing this lawsuit. (Ex. I to Thau Decl. (Rabin Dep.) at 239:15-18). Dow Jones's warning to subscribers specifically stated that the senders of the CBS Notices were not authorized to accept payments for subscriptions to Dow Jones's publications, and that Dow Jones was working with law enforcement to stop the scam, additional facts that undermined the Complaint. (Ex. C to Thau Decl.)

3

### B. Mr. Rabin and Mr. Bragar Persist with an Amended Complaint After Learning of Additional Contrary Evidence.

Soon after this lawsuit was filed, Dow Jones's counsel met with Mr. Bragar to present detailed information showing that the claims against Dow Jones were factually baseless—including the fact that Dow Jones has been working with law enforcement to stop the scheme and has not cashed any checks it identified as originating with CBS after becoming aware of the scheme. (Thau Decl. ¶ 2.)  At that meeting, Mr. Bragar also learned that Dow Jones has been actively trying to stop the CBS scheme since at least 2011, including by sending several letters to CBS demanding that it cease and desist its unauthorized activity and by publishing notices warning its customers of the scam. (Exs. D-F to Thau Decl.)

But rather than dismiss Dow Jones from a lawsuit that had no factual or legal basis, Mr. Bragar and Mr. Rabin doubled down by filing the Amended Class Action Complaint ("Amended Complaint") [Dkt. 21].  The Amended Complaint was only cosmetically different from the Initial Complaint; it changed Count I from "fraud" to "aiding and abetting fraud," and eliminated the word "conspiracy."  Mr. Rabin and Mr. Bragar still did not attach the backs of the CBS Notices to the Amended Complaint.  Indeed, their Amended Complaint did not account for *any* of the factual information Dow Jones provided to them prior to its filings.

### C. Mr. Bragar and Mr. Rabin Continue to Push their Case After Additional Discovery Confirms that it is Baseless.

After the filing of the Amended Complaint, proof that the lawsuit was frivolous continued to mount.  On August 12, 2014, Mr. Bragar, Mr. Rabin, Dow Jones's counsel, and a Dow Jones representative had a second in-person meeting.  (Thau Decl. ¶ 3.)  At this meeting, Dow Jones's counsel presented even more evidence that Dow Jones is not involved in CBS's fraud, and in fact is actively trying to stop it.  (*Id.*)  In fact, Dow Jones offered Mr. Bragar a declaration from a Dow Jones employee affirming that the company was not cashing checks identified as originating with CBS and was in fact holding checks valued at over $1.4 million.

4

(Thau Decl. ¶ 2.) Even after that meeting and that declaration offer, Mr. Bragar and Mr. Rabin persisted with their frivolous lawsuit.[1]

The lack of support for the case was laid bare at Mr. Rabin's deposition on September 9, 2014, during which he made several key admissions, including that: Mr. Rabin did not rely on the CBS Notices and was not deceived by them;[2] his allegation that Dow Jones was "conspiring" was an "overstatement"; his allegation that CBS was "authorized" by Dow Jones was an "overstatement"; and he had no basis for his allegation of a "special relationship" with Dow Jones. (Ex. I to Thau Decl. (Rabin Dep.) at 178-80, 289, 254, 283.)

On September 5 and 22, 2014, Dow Jones produced over 10,000 pages of documents showing Dow Jones's internal communications concerning its discovery of the CBS fraud, its communications with law enforcement, and its notifications to its subscribers.

> D.   **Dow Jones Discovers that Mr. Rabin Already Received a Refund and Had Not Been Truthful in his Discovery Responses.**

In late September 2014, in response to third-party subpoenas served on CBS, an attorney for CBS contacted counsel for Dow Jones. The attorney produced documents showing that ***Mr. Rabin had contacted CBS on May 19, 2014***, in direct conflict with his deposition testimony and his discovery responses. Furthermore, in response to Mr. Rabin's complaint, ***CBS informed Mr. Rabin it would issue him a refund. CBS then issued that refund to Mr. Rabin in July 2014.*** (Thau Decl. ¶ 6.)

After learning these facts, on September 23, 2014, counsel for Dow Jones contacted Mr. Bragar for an explanation. First, Mr. Bragar stated that Mr. Rabin had not contacted CBS and that he had no knowledge of any refund checks. Later, Mr. Bragar acknowledged that

---

[1] Additionally, Plaintiff served Responses to Dow Jones's First Demand for Documents that further demonstrated that the case was filed without any factual support. (*See* Ex. J to Thau Decl.) In response to Dow Jones's Request for "[a]ll documents upon which each claim at issue in this Lawsuit is or was based," Mr. Rabin and Mr. Bragar answered, "None." (*Id.*)

[2] Mr. Rabin testified that his wife, Ruth Rabin, was the one who reviewed and paid the CBS Notices—a fact that directly contradicted his allegations of reliance and payment. (Ex. I to Thau Decl. (Rabin Dep.) at 42:4-22.)

Mr. Rabin had indeed received the refund checks and had provided them to Mr. Bragar. (Thau Decl. ¶ 5.) The only explanation for why they had not been produced was that both experienced attorneys "forgot" about them. Mr. Bragar then produced the checks which totaled $1,119.85. (Ex. A to Thau Decl.) And even after producing the checks, Mr. Bragar and Mr. Rabin persisted with the story that Mr. Rabin had never contacted CBS and that the checks just appeared out of nowhere. It was not until Dow Jones confronted Mr. Bragar and Mr. Rabin with additional evidence—a phone log showing Mr. Rabin's call to CBS—that they finally acknowledged this fact. Again, the explanation offered was that Mr. Rabin "forgot." (Thau Decl. ¶ 5.)

## ARGUMENT

A court may sanction attorneys under Title 28 when excessive litigation costs are caused by unreasonable, vexatious proceedings. 28 U.S.C. § 1927. "In addition, a court may sanction an attorney *or a party* pursuant to its inherent power to manage its own affairs," including by assessing attorneys' fees. *Reichmann v. Neumann*, 553 F. Supp. 2d 307, 319 (S.D.N.Y. 2008) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)) (emphasis added). In *Reichmann*, a lawyer and his client relentlessly pursued a case that they knew was dishonest from the beginning, and sanctions were imposed against both the attorney and his client for the full amount of the defendant's attorneys' fees. *Id.*, 553 F. Supp. 2d at 328.

To impose sanctions pursuant to either Section 1927 or the court's inherent powers, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (citation omitted). Both elements are readily met here.

### I.    PLAINTIFF'S LAWSUIT WAS ENTIRELY WITHOUT COLOR.

Both in the initial filing and in prosecution of the claims, this lawsuit is entirely without color, as it is "devoid of a legal or factual basis." *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999).

### A.   No Reasonable Attorney or Party Would Have Brought this Lawsuit.

There was no objectively reasonable basis to file this lawsuit against Dow Jones. Mr. Bragar and Mr. Rabin filed this lawsuit alleging that Dow Jones was "conspiring" in the CBS fraud, but the allegation that Dow Jones was liable to him for fraud, deceptive business practices, or negligence was wholly undermined by the following facts known to Mr. Rabin, which should have been known to Mr. Bragar, before filing suit:

- Mr. Rabin had been told that CBS was sending him a refund for his payments to CBS, mooting his claim for damages against Dow Jones. (Thau Decl. ¶¶ 5, 6.)

- The CBS Notices specifically state that CBS "do[es] not necessarily have a direct relationship with the publishers or publications" being offered.  (Ex. B to Thau Decl.), in direct conflict with Mr. Rabin's allegations that the CBS Notices were "authorized" by Dow Jones. (Am. Compl. ¶ 10.)

- Many months before filing suit, Mr. Rabin reviewed Dow Jones's notice to *Barron's* readers, which advised that Dow Jones was "working with state and federal authorities to stop this unauthorized activity," in conflict with Mr. Rabin's allegation that Dow Jones was complicit in the scheme. (Ex. C to Thau Decl.)

- Mr. Rabin's wife, Ruth Rabin submitted the payments.  (Ex. I to Thau Decl. (Rabin Dep.) at 42.)   Mr. Rabin further admitted that he ***never reviewed any of the CBS Notices*** before his wife's payments to CBS.  (*Id.* at 179-180.)   This is in direct conflict with his allegation that he relied on the CBS Notices and was deceived by them.  (Am. Compl. ¶¶ 11, 26.)

In addition, despite having nearly a year to investigate his claims, Mr. Rabin testified that he spent approximately ten hours investigating the CBS scheme online, during which time he discovered *no* evidence that Dow Jones was involved in the CBS fraud.  When pressed as to what his basis was for this significant allegation, Mr. Rabin could only make the circular point that he inferred Dow Jones's involvement from the fact that that Dow Jones sold publications whose subscribers were victims of the CBS scheme.  (Ex. I to Thau Decl. (Rabin Dep.) at 45, 54.)  Indeed, the paucity of Mr. Rabin's investigation is underscored by the fact that a simple Internet search for a phrase like "Wall Street Journal" and "subscription fraud" would lead to the warning to subscribers that Dow Jones posted to WSJ.com in 2011.  "Having failed to make any

7

reasonable investigation before bringing suit, neither [Mr. Rabin] nor his attorney[ ] can maintain at the time of filing they had a reasonable belief that factors supporting the claim might be established." *Reichmann*, 553 F. Supp. 2d at 320.

### B.   No Reasonable Attorney or Party Would Have Maintained this Lawsuit.

Mr. Bragar and Mr. Rabin were obligated to "make an additional investigation into the facts underlying the claims before filing the . . . Amended Complaint." *Reichmann*, 553 F. Supp. 2d at 320.  However, after filing the Initial Complaint, Mr. Rabin and Mr. Bragar were made aware at two in-person meetings of the substantial evidence that Dow Jones not only is not perpetrating the CBS scheme, but has been actively working to stop it.  Documents supporting these facts were produced by Dow Jones, but Mr. Bragar and Mr. Rabin improperly "turned a blind eye to the inconvenient facts and documents" and continued to litigate and to pursue significant discovery in this matter.  *Reichmann*, 553 F. Supp. 2d at 320.

In addition, the specific allegations below were shown to be false:

- Alleging that Dow Jones "prior to the commencement of this action, did not directly communicate with the defrauded subscribers about the fraud." (Am. Compl. ¶ 12.)  To the contrary, Dow Jones provided subscribers numerous warnings about the fraud, including a notice posted online in 2011, years before Mr. Rabin filed suit.  (*See* Exs. C-E to Thau Decl.)

- Alleging that Dow Jones "ret[ained] the fraudulent proceeds."  (Am. Compl. ¶ 13.)  In fact, and as Mr. Rabin and Mr. Bragar were well aware at the time of filing the Amended Complaint, Dow Jones has not cashed any of the checks it identified as originating with CBS after learning of the CBS scheme.

- Alleging that Mr. Rabin's claims were "typical . . . of the members of the class" and that Mr. Rabin would "fairly and adequately protect the interests of the members of the class. . . ."  (Am. Compl. ¶¶ 19, 20.)  In fact, Dow Jones had unique defenses against Mr. Rabin—such as that he had received a refund from CBS and that Mr. Rabin's wife made the payments to CBS.

Because Mr. Rabin and Mr. Bragar "repeatedly made frivolous and unsupported filings in this action," sanctions "are appropriate." *Rosario v. Receivable Mgm't Servs. Corp.*, No. 11-Civ-8720-DLC, 2012 WL 2359874, at *5 (S.D.N.Y. June 21, 2012).

8

**II.     PLAINTIFF AND HIS ATTORNEY ACTED IN BAD FAITH.**

The bad faith element for sanctions is met if the litigation is "motivated by improper purposes such as harassment or delay." *Schlaifer Nance*, 194 F.3d at 336. "Rarely will an offending party announce his bad faith" and thus it must typically be inferred. *Reichmann*, 553 F. Supp. 2d at 321. This lawsuit—which alleged that Dow Jones was affirmatively *harming* its customers—is precisely the type of case that is brought to harass a plaintiff into a quick and unjust settlement. And Mr. Bragar's and Mr. Rabin's financial motivations in bringing this lawsuit were made clear before this Court, where Mr. Bragar stated that they had not brought suit against CBS because he was "not being paid on an hourly basis." (Ex. K to Thau Decl. at 7.)

*Bad Faith Should be Inferred from the False Allegations in the Complaint and the Failure to Investigate.* Mr. Bragar's and Mr. Rabin's bad faith may be inferred from the false allegations in the Initial Complaint alone, as set forth above in POINT I. *See Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 358 (S.D.N.Y. 2006), *aff'd*, 249 F. App'x 845 (2d Cir. 2007) ("[Plaintiff] had actual personal knowledge that the above allegations were not true. **This manifest bad faith alone entitles [defendant] to a full award of its costs and fees in this case**.") (emphasis added). *See infra* POINT I.B. This Court may also infer Mr. Rabin's and Mr. Bragar's bad faith because they failed "to investigate any of the obvious and accumulating clues to the truth. . . ." *Reichmann*, 553 F.Supp.2d at 321. Instead, Mr. Rabin and Mr. Bragar filed not one but two wholly inaccurate complaints. *See infra* POINT I.A.

*Bad Faith Should be Inferred from the Efforts to Suppress the Truth.* Courts recognize that an attempt to "suppress the truth as long as possible" by failing to produce evidence undermining one's claims—as Mr. Rabin and Mr. Bragar did here—is a sufficient basis for inferring bad faith. *See Reichmann*, 553 F. Supp. 2d at 321.

*First*, Mr. Rabin and Mr. Bragar withheld key evidence in an effort to "suppress the truth." In mid-September 2014, Dow Jones discovered that Mr. Rabin had called CBS more than a month before filing the Initial Complaint and was promised a refund. (Thau Decl. at ¶ 6.) Ultimately, only after being confronted by Dow Jones, did Mr. Rabin and Mr. Bragar produce

the refund checks.  And only after further confrontation did Mr. Bragar later admit that Mr. Rabin had in fact called CBS.  (Thau Decl. at ¶¶ 5, 6; Ex. A to Thau Decl.)  While it is unclear when Mr. Rabin received the refund checks, at best, ***Mr. Rabin filed this lawsuit solely against Dow Jones seeking to recover money that CBS had already told him it would refund.***  The implication of Mr. Rabin's and Mr. Bragar's actions, however, is worse:  Mr. Rabin and Mr. Bragar purposely did not cash the checks and purposely did not produce them to Dow Jones in order to prolong and multiply this lawsuit.

*Second,* Mr. Rabin was not truthful in his discovery responses in an effort to "suppress the truth."  Mr. Rabin falsely stated in his admission responses and testified in his deposition that he made no pre-suit contact with CBS regarding his allegations in this lawsuit.  (*See* Ex. H to Thau Decl. at Request No. 5.); (Ex. I to Thau Decl. (Rabin Dep.) at 77, 90.))  Once he was confronted with incontrovertible evidence, Mr. Bragar acknowledged that Mr. Rabin's previous statements had been false, claiming that Mr. Rabin "forgot" about the key fact that he had reached out to CBS and received a refund.  Mr. Rabin's false testimony is evidence of his and Mr. Bragar's bad faith in this lawsuit.  *See, e.g., Mackler Prods., Inc. v. Turtle Bay Apparel Corp.*, 153 F. Supp. 2d 504, 508 (S.D.N.Y. 2001) (sanctioning counsel under inherent authority who presented false evidence and permitted his client to give false testimony).

## CONCLUSION

For the reasons set forth above, Defendant Dow Jones & Company, Inc., respectfully requests that the Court grant its motion and enter sanctions against Mr. Bragar and Mr. Rabin, award Dow Jones its attorneys' fees and costs incurred in preparing this motion and in defending this frivolous action.  Those fees and costs total approximately $325,000, and Dow Jones will submit supporting documentation at the Court's request.  Dow Jones further requests that the Court grant it all such further relief to which it may be entitled.

Dated:  October 10, 2014

Respectfully submitted,

**VINSON & ELKINS LLP**

By: /s/ *Clifford Thau*

Clifford Thau
Hilary Preston
VINSON & ELKINS LLP
666 Fifth Avenue, 26th Floor
New York, New York 10103
Telephone (212) 237-0000
Facsimile:  (212) 237-0100
*cthau@velaw.com*
*hpreston@velaw.com*

*Attorneys for Defendant
Dow Jones & Company, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2014, a copy of the foregoing instrument was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of this Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

/s/ *Clifford Thau*
Clifford Thau