USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/30/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
I. STEPHEN RABIN, on behalf of         :
himself and on behalf of all           :
others similarly situated,             :
                                       :
                                       :        14-cv-4498 (JSR)
      Plaintiffs,                      :
                                       :        MEMORANDUM ORDER
      -v-                              :
                                       :
DOW JONES & COMPANY, INC.,             :
                                       :
      Defendant.                       :
                                       :
----------------------------------------x
JED S. RAKOFF, U.S.D.J.

      Defendant Dow Jones & Company, Inc. ("Dow Jones") brings this

motion for sanctions pursuant to 28 U.S.C. § 1927 and the Court's

inherent authority against plaintiff I. Stephen Rabin and

plaintiff's attorney, Raymond A. Bragar, for unjustifiably

multiplying the proceedings in the above-captioned matter. After

full consideration of the parties' submissions, the Court finds that

Mr. Rabin's and Mr. Bragar's conduct in pursuit of this action

warrants sanctions, because the lawsuit, at least as of the time of

the amended complaint, was entirely without color and the evidence

shows it was brought for improper purposes.

      The relevant facts and procedural history are as follows:

      Plaintiff Mr. Rabin initially brought this putative class

action complaint against publishers The New York Times Company,

Forbes, Inc., and Dow Jones for their alleged participation in a

fraudulent subscription renewal scheme, orchestrated by Circulation

Billing Services and its related entities (collectively, "CBS").

1

Class Action Complaint ("Compl.") ¶ 1. The plaintiff asserted three claims against defendants: (1) "conspir[acy] . . . to defraud," *id.* ¶ 23; (2) "deceptive acts or practices" in violation of the New York General Business Law § 349, *id.* ¶ 30; and (3) "negligen[ce]" in disclosing subscribers' information to third parties and "failing to notify" subscribers about the CBS fraud, *id.* ¶¶ 33-35.

In response to defendants' motion to dismiss the complaint for, *inter alia*, suing "the wrong parties," *see* Memorandum of Law in Support of Defendants' Joint Motion to Dismiss Complaint under Fed. R. Civ. P. 12(b)(6) and 9(b) at 1, plaintiff filed an amended complaint, which reasserted the allegations made in the initial complaint with the exception of a few minor changes to Count I — transforming "fraud" to "aiding and abetting fraud," and eliminating the word "conspiracy." *See* Amended Class Action Complaint ("Am. Compl.") ¶ 25. Following defendants' motion to dismiss the amended complaint, plaintiff reached settlement agreements with The New York Times and Forbes, leaving Dow Jones as the sole defendant.

On September 23, 2014, after a hearing on Dow Jones's motion, the Court dismissed the case in its entirety, for failure to plead "specific facts . . . as required by Fed. R. Civ. P. 9(b)" to support plaintiff's "conclusory allegations" with respect to Dow Jones's liability. *See* Memorandum Order dated Sept. 23, 2014 ("Mem. Or."), at 3—4. Now Dow Jones moves for sanctions against plaintiff and plaintiff's attorney, pursuant to 28 U.S.C. § 1927 ("Section 1927") and the Court's inherent authority, requesting that the Court

order Mr. Rabin and Mr. Bragar to pay Dow Jones's attorneys' fees incurred in defense of plaintiff's unsubstantiated claims. *See* Memorandum of Law in Support of Defendant's Motion for Sanctions under 28 U.S.C. § 1927 and the Court's Inherent Authority ("Def. Br.") at 1—2.

Section 1927 authorizes a court to require an attorney, "who so multiplies the proceedings in any case unreasonably and vexatiously" to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Similarly, the court may also impose sanctions pursuant to its "'inherent power' to award attorneys' fees against the offending party and his attorney when it determines a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 398 (2d Cir. 1997) (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985)). The only distinction between an award made under Section 1927 and one made pursuant to the court's inherent power is that Section 1927 applies only to attorneys, while the court's inherent power allows the court to assign liability to "an attorney, a party, or both." *See Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986).

To impose sanctions under either authority, a court must find "clear evidence" that (1) the offending party's claims were "entirely without color," and (2) the party acted for "reasons of harassment or delay or for other improper purposes." *Id.* at 1272.

The Second Circuit has interpreted this discretion narrowly, requiring "a high degree of specificity in the factual findings of [the] lower courts." *See id.* at 1272–73 (quoting *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 344 (2d Cir. 1986)).

   Turning first to the action's merits, the Court reaffirms its finding, articulated in the Order dismissing the action, that each of plaintiff's alleged claims fails as a matter of law. *See* Mem. Or. at 2. A claim is colorable when it "'has some legal and factual support,'" leading to a reasonable conclusion that "it might be successful, while a claim lacks a colorable basis when it is utterly devoid of a legal or factual basis." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999) (quoting *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980)); *see also Reichmann v. Neumann*, 553 F. Supp. 2d 307, 320 (S.D.N.Y. 2008) ("The question is whether a reasonable attorney or reasonable plaintiff could have concluded that facts supporting the claim *might be established*." (emphasis in original; internal quotation marks omitted)).

   After extensive briefing and oral argument, the Court concluded that plaintiff's amended complaint pled "no actual facts" to support the purported "conclusory allegation[s]" of Dow Jones's liability in the CBS fraud. *See* Mem. Or. at 3. The Court noted that plaintiff's "failure to act" theory of the case required plaintiff to "plead facts showing that the defendant had an affirmative duty to act or that the inaction was intentionally designed to aid the fraud." *Id.* at 2. Not able to discern either, the Court concluded that insofar

as the plaintiff's complaint had no factual support, plaintiff's action lacked an objectively reasonable basis.[1]

Turning to the second prong of the test, the Court finds that the record contains sufficient evidence to show that Mr. Rabin and Mr. Bragar litigated this action in bad faith. A suit is brought in "bad faith" if it is "'motivated by improper purposes such as harassment or delay.'" *Reichmann*, 553 F. Supp. 2d at 320 (quoting *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000)). Furthermore, subjective bad faith can be inferred "when the actions taken are 'so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose.'" *Schlaifer Nance*, 194 F.3d at 338 (quoting *New York v. Operation Rescue Nat'l*, 80 F.3d 64, 72 (2d Cir. 1996)).

Here, at least two allegations central to the viability of plaintiff's claim were demonstrably false. During the course of Mr. Rabin's deposition, when plaintiff was asked about the factual basis for the allegations that Dow Jones was "conspiring" with CBS, Compl. ¶ 10; Am. Compl. at 9, and that Dow Jones had "authorized" fraudulent CBS Notices, Am. Compl. ¶ 10, Mr. Rabin admitted these assertions were no more than "overstatement[s]." *See* Declaration of Clifford Thau in Support of Defendant's Motion for Sanctions under 28 U.S.C. § 1927 and Inherent Authority dated Oct. 10, 2014 ("Thau

---

[1] In fact, the Court found that the plaintiff's "[a]mended [c]omplaint show[ed] just the opposite — that defendant published notices warning its customers of the fraud." *Id.* at 3 (citing Am. Compl., Exhibit ("Ex.") 1 (Barron's Open Letter to Subscribers Regarding Fraudulent Renewal Notices)).

Decl."), Ex. I (Deposition of I. Stephen Rabin dated Sept. 9, 2014) ("Rabin Dep.") at 254:17–20, 289:8–13. In *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351 (S.D.N.Y. 2006), *aff'd*, 249 F. App'x 845 (2d Cir. 2007), the court held that plaintiff's "actual personal knowledge that the . . . allegations were not true" was sufficient to "manifest bad faith," thus entitling defendant to "a full award of its costs and fees." *Id.* at 358. Similarly here, Mr. Rabin's admission that his allegations were unsubstantiated justifies an inference of bad faith, especially considering that the false allegations were not corrected in the amended complaint.

Furthermore, Mr. Bragar failed to conduct a good faith investigation into evidence that Dow Jones had been "fighting the fraud." *See* Declaration of Raymond A. Bragar in Opposition to Dow Jones' Motion for Sanctions dated Oct. 24, 2014 ("Bragar Decl.") ¶ 4 (stating that "[he] was aware that Dow Jones claimed to be fighting the fraud, but found its claim unpersuasive"); Thau Decl. ¶ 2 (citing Exs. C, D, E (open letters to subscribers and online fraud alert notices posted by Dow Jones in 2011–2013)). This evidence was in direct conflict with plaintiff's overbroad allegations alleging Dow Jones's authorization of, involvement in, and benefit from the CBS scheme. *See* Am. Compl. ¶¶ 8–15. Furthermore, at the parties' "meet and confer" session on July 22, 2014, Dow Jones's attorneys informed Mr. Bragar that the publisher had not cashed any of CBS-generated checks after it learned of the fraud scheme. Thau Decl. ¶¶ 2–3; Bragar Decl. ¶ 6. They confirmed this in a signed affidavit on

July 31, 2014. Thau Decl. ¶ 2. Nonetheless, the amended complaint

reasserted the over-generalized allegation that Dow Jones "received

monies" and "ret[ained] [] the fraudulent proceeds" for

subscriptions obtained by CBS.[2] Am. Compl. ¶¶ 13–14. Mr. Bragar's

failure to investigate or adjust the pleadings in the amended

complaint according to the facts known at the time supports an

inference of bad faith. *See Reichmann*, 553 F. Supp. 2d at 320

(finding that counsel's failure "to investigate whether there was

any factual support at all for the claims, beyond the

representations of the client . . . . and turn[ing] a blind eye to

the inconvenient facts and documents" permitted an inference of bad

faith).[3]

 Plaintiff's counsel asserts that "[a]s the facts developed,

[they] believed that, *factually*, they had a better action against

Dow Jones, than [against] the other two defendants, who readily

settled." Plaintiff's Memorandum of Law in Opposition to Defendant

Dow Jones Motion for Sanctions of $325,000 ("Pl. Br.") at 6

(emphasis added). But, the Court finds, there were no material facts

_____

[2] Mr. Bragar argues that he "did not plead these facts in the amended complaint
because [he] learned them in the 'off the record' conversation." Bragar Decl. ¶ 6.
Although a plaintiff has no obligation to account for a defendant's version of the
facts in his pleadings, Rule 11 stipulates that "[b]y presenting to the court a
pleading, . . . an attorney . . . certifies that to the best of [his] knowledge,
information, and belief, formed after an inquiry reasonable under the
circumstances . . . the factual contentions have evidentiary support." Fed. R.
Civ. P. 11.

[3] Not only had Mr. Bragar failed to investigate the evidence provided in the
parties' first meet and confer session, but plaintiff continued to pursue the
claim against the publisher, despite accruing additional evidence showing that Dow
Jones had not engaged in the CBS scheme. *See, e.g.*, Thau Decl. ¶ 2 (confirming
that Dow Jones did not cash subscription checks originating from CBS); Ex. F (Dow
Jones's "cease and desist" letters sent to CBS); Ex. G (Dow Jones's letters to law
enforcement and consumer protection agencies regarding the CBS fraud).

supporting this statement. On the contrary, the factual evidence

presented in both the initial and amended complaints was, as the

court found, insufficient to support an inference that Dow Jones

engaged in "misleading acts or practices," or "itself misrepresented

anything." Mem. Or. at 3. Moreover, plaintiff responded to Dow

Jones's discovery request for "[a]ll documents upon which each claim

at issue in this [l]awsuit is or was based," — with "[n]one." Thau

Decl., Ex. J (Plaintiff's Response to Defendant Dow Jones & Company,

Inc.'s First Demand for Documents) ¶ 19.

 Further still, plaintiff withheld relevant evidence from

defendant throughout this litigation, suggesting that Mr. Rabin and

Mr. Bragar sought to "suppress the truth" underlying the viability

of their action against Dow Jones. *See Reichmann*, 553 F. Supp. 2d at

321. The withheld evidence included: the reverse side of the CBS

Renewal Notices, which state that there is "not necessarily . . . a

direct relationship" between CBS and Dow Jones, Thau Decl., Ex. B;

Mr. Rabin's communications with CBS two months prior to the filing

of the suit about his receipt of a magazine he did not order,

*compare* Thau Decl., Ex. H (Plaintiff's Response to Dow Jones &

Company, Inc.'s First Set of Request for Admissions) ¶ 5 (failing to

disclose Mr. Rabin's communications with CBS), *with* Rabin Dep. at

77:7—14 (admitting to having contacted CBS); and the three checks

plaintiff received from CBS refunding a portion of the payments Mr.

Rabin's wife made in response to the CBS Notices, *see* Thau Decl.,

Ex. A. With respect to the three checks, at some point during the

course of this litigation, Mr. Rabin presented them to Mr. Bragar, who considered the checks "of no consequence" and decided to put them in a file instead of disclosing them to Dow Jones, even though the checks, albeit uncashed, were among the payments plaintiff sought as damages against Dow Jones. *See* Bragar Decl. ¶¶ 8–9.

And there is still more. When Mr. Rabin was confronted with evidence during his deposition that called into question the truthfulness of a dozen or so assertions he had made earlier in the deposition and in his responses to Dow Jones's requests for admissions, Mr. Rabin claimed that he "forgot," or that the true circumstances "must have slipped [his] memory." *See, e.g.*, Rabin Dep. at 142:6–143:16, 149:15–150:2. For example, Mr. Rabin was "unable to recall" at least six out of eight different lawsuits he had brought since 2006, including other class-action suits where Mr. Rabin was the named plaintiff, and suits where he was represented by Mr. Bragar's firm. *See, e.g.*, *id.* at 141:19–142:10, 146:12–147:6. Given that Mr. Rabin himself is an experienced class-action attorney, the Court finds suspect his inability to recall and accurately testify to his personal involvement in prior litigation.

Finally, the Court finds no merit in plaintiff's argument that there can be no finding of "vexatious multiplication" of proceedings because the case only lasted three months. *See* Pl. Br. at 8. As already noted, the Court has the discretion to consider the totality of the factual evidence contained in the record to determine whether sanctions are appropriate in any given case. *See Chambers v. NASCO,*

*Inc.*, 111 S. Ct. 2123, 2137 (1991); *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991).

Accordingly, having found that plaintiff's claim had no color, and having identified multiple aspects of this lawsuit that show plaintiff and his counsel acted in bad faith, the Court finds that sanctions against Mr. Rabin and Mr. Bragar are appropriate.

Turning to the amount of the award, defendant urges the Court to order plaintiff and plaintiff's attorney to pay the entirety of the costs Dow Jones accrued in defense of this lawsuit. Def. Bf. at 2. While the Court agrees that, ultimately, the plaintiff's suit was shown to be without color and pursued in bad faith, it hesitates to conclude that the initial complaint was entirely baseless. Considering that, at the time of the initial filing, plaintiff may not have had any reasonable method to differentiate between the three original defendants and had not had the benefit of initial discovery, the Court affords plaintiff the presumption, weak though it may be, that the initial complaint was not filed in bad faith.

However, such presumption of good faith with respect to plaintiff and his counsel does not extend much further. In light of the Court's factual findings above, the Court considers Mr. Rabin's and Mr. Bragar's conduct to be sanctionable from the time of the filing of the amended complaint on August 1, 2014. Accordingly, defendants' motion for sanctions in the amount of its attorneys' fees and costs incurred following the filing of the amended complaint (including this motion for sanctions) is granted.

10

Defendant is directed to submit to the Court a detailed calculation of the amount of such fees and costs within two weeks from the date of this Order. Plaintiff may then submit, no later than one week thereafter, any challenge to that calculation, following which the Court will determine the amount of the sanction.

The Clerk of the Court is directed to close docket number 36.

SO ORDERED.

Dated:      New York, NY
            July 3d, 2015                    _____
                                             JED S. RAKOFF, U.S.D.J.

11